LEE A. GIBBONS, Plaintiff-Appellee, v. CLARKSON GRAIN COMPANY, Defendant-Appellant.

Fourth District   No. 4—95—0925

Argued April 17, 1996.—Opinion filed June 20, 1996.

G. Edward Moorman (argued), of Alton, for appellant.

William H. Knuppel (argued), of Boggs & Knuppel, P.C., of Havana, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

Defendant Clarkson Grain Company appeals from an entry of summary judgment in favor of plaintiff Lee Gibbons by the circuit court of Cass County. Defendant argues (1) plaintiff's riparian rights were not violated; and (2) summary judgment was improper, as a genuine issue of material fact existed. We affirm.

Plaintiff owns a life estate interest in property on the bank of the Illinois River in Beardstown, Illinois. The property adjacent to plaintiff's property is owned by Logsdon Sand & Gravel Company (Logsdon) and leased to defendant. Defendant operates a barge-loading facility on the property.

On October 5, 1994, plaintiff filed an amended complaint against defendant, seeking to enjoin the loading of barges in such a manner that causes them to extend in front of her property.

Both parties were deposed on March 16, 1995. Lynn Clarkson testified that he was the president of defendant company and that defendant leased the property from Logsdon and constructed a loading facility on the land. He was responsible for the layout of the facility, although he was shown no survey of the land. Instead, he relied upon Logsdon's indication of the location of the property lines.

Clarkson further testified that the standard length of a barge was 195 feet. He agreed the loading conveyor was less than 190 feet from the lot line shown to him and that the fronts of barges extended past the lot line during loading. He also stated that defendant did not seek permission to use the area across the lot line. In addition, he stated there were other methods of loading which would not cause the barges to extend past the lot line. However, defendant did not utilize these methods because it was easier to let the barges extend past the lot line.

Plaintiff testified that she has a life estate interest in riverfront property adjacent to defendant's loading facility. Although the property is now vacant, it was previously leased to a business operation. She stated she had attempted to lease the land several times, but failed, and she would have used the land to moor her own boats "had they gone off lease."

Plaintiff further testified there had been a boat ramp near the lot line and she would like to replace it and utilize the property as a marina. However, the extending barges would interfere with this use. She estimated the proposed boat ramp would be within a few feet of the property line, while the barges have extended as far as 40 to 50 feet past the property line. She admitted, however, that the barges had never touched the river bank on her property. She also admitted no one had indicated to her they wanted to do business on the property but could not because the barges extended beyond the lot line.

On April 13, 1995, plaintiff filed a motion for summary judgment. In a written order dated September 14, 1995, the trial court awarded summary judgment to plaintiff and enjoined defendant from loading or unloading barges in such a manner that the barges "cross the imaginary line of plaintiff's riparian rights of access" to the river. Defendant's timely appeal followed.

Defendant first argues the trial court erred in holding, as a matter of law, that plaintiff's riparian rights were violated by barges extending in front of her property. Defendant contends it was merely exercising its right to navigate on the river.

■ A riparian owner is one who owns land bordering upon a running river or stream and enjoys certain rights. *Leitch v. Sanitary*

*District*, 369 Ill. 469, 473, 17 N.E.2d 34, 36 (1938). These "riparian rights" include the right of access to the water from the land. *Bowes v. City of Chicago*, 3 Ill. 2d 175, 197, 120 N.E.2d 15, 28 (1954). However, a shore owner's riparian rights are subservient to the public's right to navigation. See *Ensminger v. People ex rel. Trover*, 47 Ill. 384, 390-91 (1868).

For support, defendant relies upon *Perona v. Illini Harbor Services, Inc.*, 130 Ill. App. 3d 984, 986, 474 N.E.2d 1270, 1271 (1985), in which the court held that "parking or mooring barges awaiting loading or unloading is an activity incident to the right of navigation." However, *Perona* is distinguishable from the present case. *Perona* involved an action for trespass brought by the owner of underlying riverbed property; the plaintiff did not own property on the riverbank. Thus, the case did not involve riparian rights. Unlike *Perona*, the focus of the present case is on plaintiff's riparian rights, as she owns property on the riverbank.

■ Further, the court in *Perona* held that the mooring of barges over the plaintiff's property qualified as "navigation," because the barges were "awaiting loading or unloading." This suggests a temporary occurrence, arising only occasionally when the loading facility might be busy. Most importantly, the barges did not leave the stream of traffic. In the present case, however, the barges were moored in front of plaintiff's property, not while "awaiting loading," but during loading. Thus, defendant's practice of extending the barges over the lot line was neither temporary nor occasional. Rather, it occurred each and every time defendant loaded a barge—an operation that removes the barge from the stream of traffic.

In *Hall v. Wantz*, 336 Mich. 112, 57 N.W.2d 462 (1953), the Supreme Court of Michigan addressed a similar issue. There, the plaintiff sought to enjoin the defendant's practice of mooring his fishing raft—a business venture—in front of plaintiff's lakefront property. The defendant contended he was merely exercising his right of navigation. However, the court disagreed, holding:

"[The defendant was] not confining himself to the exercise of the rights of the public generally to navigation, but [went] beyond that to engage in a practice not incident to or a part of the right of navigation, namely *** conducting a business there." *Hall*, 336 Mich. at 119, 57 N.W.2d at 465.

Likewise, in the present case, defendant went beyond the right of navigation and used the area in front of plaintiff's property as part of a private enterprise—loading barges. Accordingly, despite defendant's contentions, such action does not qualify as navigation. Otherwise, barges could be moored anywhere along the shoreline, for business

purposes under the guise of "navigation," and a riparian owner's rights would be meaningless.

Defendant also maintains that a riparian owner's right of access to the water does not apply to the full width of the shoreline. Thus, defendant contends, unless plaintiff is denied complete access to the water, there is no violation of her riparian rights.

A riparian owner's right of access to the water attaches to the entire shoreline of the property. See 65 C.J.S. *Navigable Waters* §67 (1966); *Ritter v. Standal*, 98 Idaho 446, 451, 566 P.2d 769, 774 (1977); *Tiffany v. Town of Oyster Bay*, 234 N.Y. 15, 23, 136 N.E. 224, 226 (1922); *Johnson v. Jeldness*, 85 Or. 657, 660, 167 P. 798, 799 (1917). Even in Illinois, a riparian owner's right of access is defined as the right to pass to and from the water "within the width" of the property's shoreline. *McCormick v. Chicago Yacht Club*, 331 Ill. 514, 521, 163 N.E. 418, 420 (1928); *Cobb v. Commissioners of Lincoln Park*, 202 Ill. 427, 431, 67 N.E. 5, 6 (1903); *Revell v. People*, 177 Ill. 468, 484, 52 N.E. 1052, 1057 (1898).

Although the Illinois cases do not dictate that the full width of the shoreline must be kept open, it is well recognized in other jurisdictions that a riparian owner's right of access is violated by any obstruction in front of the property, even if the owner has access to the water from a portion of the property which is not obstructed. See 78 Am. Jur. 2d *Waters* §94 (1975); *Tiffany*, 234 N.Y. at 23, 136 N.E. at 226; *Hollan v. State*, 308 S.W.2d 122, 125 (Tex. Civ. App. 1957); 1 R. Beck, Water & Water Rights §6.01(a)(1), at 94 & n.22 (ed. 1991). Thus, considering the well-settled case law from other jurisdictions and the importance of a riparian owner's right of access, we hold that the rule applies in Illinois as well. See *City of Peoria v. Central National Bank*, 224 Ill. 43, 56 (1906) (" 'All the advantages of riparian ownership depend upon access to the water \*\*\*.' \*\*\* The right to preserve his contact with the water is one of the most valuable of a riparian owner").

■ Additionally, defendant suggests that the trial court demonstrated its confusion regarding riparian rights when it referred to "the imaginary line of plaintiff's riparian rights of access," as no such line exists. However, defendant is mistaken. The general approach to apportioning riparian rights between adjoining riparian owners is to extend lines from the ends of the lot lines at right angles to the line of the waterfront. 65 C.J.S. *Navigable Waters* §64 (1966). Thus, contrary to defendant's suggestion, the trial court was correct when it employed an "imaginary line" extending from the lot line to determine whether defendant's method of loading barges violated plaintiff's riparian rights.

■ Defendant's final contention is that the entry of summary judgment for plaintiff was improper. It maintains there was a genuine issue of material fact, in that there was no evidence as to whether the extending barges unreasonably interfered with plaintiff's right of access. However, defendant cites no authority to support its argument. In fact, there is no requirement that a property owner's riparian rights be "unreasonably interfered with" in order to maintain a cause of action.

A trial court properly grants summary judgment when the pleadings, depositions, and affidavits show no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994); see also *Malone v. American Cyanamid Co.*, 271 Ill. App. 3d 843, 845, 649 N.E.2d 493, 495 (1995). Further, the entry of summary judgment is reviewed *de novo*; it is not a matter within the trial court's discretion. *Golla v. General Motors Corp.*, 261 Ill. App. 3d 143, 147, 633 N.E.2d 193, 196 (1994), *aff'd*, 167 Ill. 2d 353, 657 N.E.2d 894 (1995).

The testimony of the parties showed that (1) plaintiff owns riverfront property and enjoys a right of access to the water; (2) defendant leases riverfront property adjacent to plaintiff's and operates a barge-loading facility on the property; and (3) defendant's method of loading barges causes them to extend over the lot line between the properties. Based upon this evidence, we find defendant's barge-loading method interfered with plaintiff's right of access to the water, whether or not it was unreasonable.

For the foregoing reasons, we affirm the entry of summary judgment by the circuit court of Cass County.

Affirmed.

GREEN and STEIGMANN, JJ., concur.